# Beale *v.* Posey.

*Action by Guest against Innkeeper, for Money Lost.*

1. *Statutes construed with reference to common law.*—All statutes are to be construed with reference to the principles of the common law; and an intention to abrogate or modify it is not to be presumed, further than is expressed, or absolutely required by the case.

2. *Innkeeper's liability; at common law.*—At common law, an innkeeper was bound to receive and entertain, for a reasonable reward, all persons who applied to him, not being of disorderly conduct, and having the means of payment; the principles regulating his rights, duties, and liabilities towards his guests, being founded on considerations of public policy, and intended for the security of travellers and strangers, who were necessarily compelled to intrust their property to him.

3. *Same; statutory regulations as to.*—By statutory provisions forming a part of the general revenue law (Code, §§ 522–25), the keepers of inns and hotels are required to take out an annual license, and their liabilities towards their guests are declared to be, "in the absence of a special contract regulating the same, such as are fixed by the laws of the land;" while the keeper of a "house or place for the entertainment of travellers, lodgers, transient persons or guests, in any town, city or vil-

[Beale v. Posey.]

lage," from whom no license is required, but on whom an income tax is imposed, is allowed a large liberty in the selection of his guests, and is required to make a special contract with them, evidenced by a memorandum printed or written.

4. *Same.*—If the keeper of such unlicensed house of entertainment fails to make a special contract with his guest, as required by the statute, he can not recover compensation for board and lodging furnished, and assumes the common-law liability of an innkeeper for the loss of goods belonging to his guest; and when sued by a guest for the loss of goods, he can not be heard to say that he was not a licensed innkeeper.

5. *Same ; keeping depository for valuables, and posting notice thereof.* The keeper of an inn or public hotel in a city may relieve himself from liability for the loss of money, jewelry, &c., by providing a safe depository for such articles, and giving notice thereof to his guests (Code, §§ 1549–51) ; but the posting of notice on a single door in the house, no matter how public it may be, is not a sufficient compliance with the statute, and does not justify the inference of notice to any particular guest. This provision, however, is confined to cities, and has no application to houses in a town or village, or in the country.

6. *Same ; who is guest.*—A traveller, or transient visitor, engaged on temporary business, does not lose the character of a guest in a hotel, merely because he makes a special contract for board and lodging at less than the usual charges.

7. *Relevancy of evidence as to conduct of servant charged with larceny of guest's money, in action against innkeeper.*—In an action by a guest against an innkeeper, for the loss of money, the conduct, demeanor or appearance of a servant at the hotel, while on trial charged with the larceny, though it might be competent evidence against himself as an implied admission or confession, is not admissible against the defendant, his employer.

8. *To what witness may testify.*—A witness may testify, as a fact, that he "knew and recognized the walk" of another person.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by James W. Posey, against W. G. Beale, as the keeper of a public hotel in the town of Evergreen in said county, called and known as the "Evergreen Hotel," to recover damages for money lost by the plaintiff while a guest at said hotel, in May, 1879, and which was alleged to have been stolen by some one or more of the defendant's servants, or to have been lost by the carelessness or negligence of the defendant or his servants; and was commenced on the 1st April, 1880. The defendant filed two special pleas; the first alleging, "that the said town of Evergreen, at the time of said alleged loss by plaintiff, contained less than twenty-five hundred inhabitants, and defendant did not, at, before, or since said time, have any license as the keeper of an inn or hotel, and was not liable as such for the loss alleged to have been sustained by plaintiff;" and the second, "that at, before, and since the time alleged in the complaint, defendant had an iron safe, for the safe-keeping of valuable articles belonging to his customers, and said plaintiff failed and refused to deposit his said money in said safe, but kept it exclusively in his own custody, and

kept the same so negligently and carelessly as to contribute to the loss thereof." The court sustained a demurrer to each of these special pleas, and the cause was tried on issue joined on the plea of not guilty.

On the trial, the plaintiff testified as a witness for himself, and stated the facts connected with the loss of his money, while occupying a room at the defendant's hotel in Evergreen, on the night of May 6th, 1879, or early the next morning before he was up; and he adduced evidence tending to show that the money was stolen by one George Richardson, a servant in the hotel, who waited on the plaintiff in his room, brought water, &c. It appeared from the plaintiff's testimony, that the money was in his pocket-book in his pantaloons, which he hung on the bed-post at his head on retiring at night; and that he had not discovered they were missing, until said Richardson asked him, in the morning, before he arose, whether those were his pantaloons in an adjoining unoccupied room; and when they were examined, his pocket-book and money was gone, and some of the papers were scattered about the room. In giving his testimony as to these matters, plaintiff stated, among other things: "I slipped the bolt in the catch on the door, there being no key in the lock, and, pulling the door to see if the bolt was fastened, I found that it was. . . I slept until morning, and awoke about sun-rise; and very soon afterwards I heard some one walk down the hall. *I recognized the walk to be that of George Richardson. I knew his walk.*" The defendant objected to the admission of the italicized words as evidence, but without stating any particular ground of objection; and he reserved an exception to the overruling of his objection. It appeared that said Richardson was arrested, with other servants about the hotel, on the day after the loss of the money, under a charge of larceny; and a witness for the plaintiff testified: "On the trial, *George was laughing, and seemed to be very lively in the beginning; but, towards the last, he looked sad and downcast.*" To the admission of this statement as evidence the defendant objected, and reserved an exception to the overruling of his objection.

It appeared that the plaintiff had been in the habit of stopping at the defendant's hotel whenever he was in Evergreen, and had attempted " to make arrangements with defendant to count the time when he was there, and let him pay by the month, or somehow that way; but defendant said he could not do that, but would sell him meal tickets, worth fifty cents each, at three for a dollar, and lodging at the same rate;" that plaintiff bought some tickets under this arrangement, and afterwards continued to pay at the same rates, whenever he stopped at the hotel, but without buying any tickets in advance. On

the part of the defendant it was proved, "that he kept an iron safe in the house for the deposit of money and valuables by persons stopping with him, and that a notice to that effect, in writing, was posted on one of the doors of the parlor, before and at the time of plaintiff's said loss;" also, "that plaintiff did not make any application to deposit anything with him that night, and he did not know plaintiff was in the house until informed of the loss in the morning." It was proved, also, that the defendant had not taken out a license as the keeper of a public hotel, as by law required.

"The foregoing was, in substance, all the evidence introduced on the trial; and the court thereupon charged the jury," among other things, as follows: 1. "That it was the duty of the defendant to hire honest and competent servants; and if he did not, he would be liable, if the plaintiff thereby lost his money, without fault or negligence on his own part." 2. "That the taking out of a license as the keeper of an inn or hotel was not necessary to render the defendant liable; for he would be liable without such license, if his liability had been shown in all other respects."

The court charged the jury, also, on the request of the plaintiff, as follows: 1. "A hotel-keeper, who employs servants to attend to the rooms of his guests, is expected to employ those who are honest; and if he fails to do so, and a loss is thereby occasioned, without negligence on the part of the guest, he is responsible to the guest for such loss." 2. "If the jury believe, from the evidence, that the plaintiff's money was taken or stolen by the defendant's servants, employed by him in the house, or through the negligence of said servants, without negligence on the part of the plaintiff; then the defendant is liable to the plaintiff, if he was at the time the guest of the defendant at his hotel." 3. "If the jury are satisfied, from the evidence, and under the law as given to them by the court, that the defendant was the proprietor and keeper of a hotel or inn; and that plaintiff was a guest at said hotel, and, while at said hotel, had his money stolen from him by the defendant's servant, employed by the proprietor as a waiter in said hotel, without negligence on the part of the plaintiff; then plaintiff is entitled to recover whatever amount the proof satisfies them was so stolen from him, with interest thereon; and the plaintiff is only required in such case, in order to make the hotel-keeper liable, to exercise ordinary care and diligence." 4. "Unless the jury should believe, from the evidence, that the defendant had posted, at the time the money sued for was lost, notices on the doors and other public places in his said house or hotel, containing the terms in the statute, or the material parts thereof, as required by section 1549 of the Code,—then

[Beale v. Posey.]

the defendant would not be relieved from his liability as hotel-keeper; and even if the jury should believe, from all the evidence together, that the defendant had, at that time, one notice of that character posted on the door of the parlor in the house, and no other place or door therein, this would not be a compliance with the statute, and would not relieve the defendant from liability as such hotel-keeper." " To the giving of each and all of which instructions," the bill of exceptions states, "the defendant then and there excepted;" and he requested the court, in writing, to instruct the jury, " that if they believe, from the evidence, that the defendant did not take out a license as inn-keeper, or hotel-keeper, for the year 1879, then, notwithstanding the fact that he might have kept boarders, and entertained transient persons, he would not be an inn-keeper, or hotel-keeper." The court refused to give this charge, and the defendant excepted to its refusal.

The rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charge asked, are now assigned as error.

G. R. FARNHAM, with TROY & TOMPKINS, for appellants.—1. At common law, an innkeeper was responsible for the loss of goods belonging to his guests, unless caused by the act of God, the public enemy, or the conduct of the guest himsef, his servant, or companion. — *Mason v. Thompson*, 9 Pick. 280; *Calye's case*, 8 Co. 32; 1 Smith's L. C. 266; *Chamberlain & Co. v. Masterson*, 26 Ala. 3 71. The rigor of this rule grew out of the necessities of the times in which it was adopted, and modifications of it have been adopted in more modern times, as suggested in the case of *Chamberlain & Co. v. Masterson*, *supra*. But, if the guest did not trust his goods to the custody of the innkeeper, taking the care and custody exclusively on himself, the innkeeper was discharged from liability.—Story on Bailments, §§ 466, 466 a, 468 a, 483; Whart. Law Negl. §§ 690-91; 21 N. Y. 111; 1 Denio, 99. And the keeper of a lodging-house did not assume or incur the high responsibility of an inn-keeper.—Story on Bailments, § 475 a; Whart. Negl. § 681.

2. These rules of the common law have been changed by statute in this State (Code, §§ 522-25); and the manifest purpose of these statutory provisions was to abrogate the rules of the common law, which required an innkeeper to receive as guests all persons who might apply for admission, and to extend equal accommodations to all. The court will take judicial notice of the state of public affairs existing at that time, growing out of political events and attempted legislation in favor of social as well as political equality, and will give effect to the manifest purpose and intention of our law-makers. Un-

[Beale v. Posey.]

der these statutory provisions, a person might keep a private house of entertainment for boarders or guests, without incurring or assuming the duties or liabilities of the keeper of a public inn or hotel. He might refuse to take out a license, or he might surrender a license already taken out; and in either case, he was not an innkeeper. The taking out of a license was the single fact which determined his character, and fixed his liabilities and duties. If the refusal to take out a license, or the surrender of a license already taken out, does not relieve him of the common-law liability of an innkeeper for the goods of his guest, neither does it relieve him of the common-law duty of receiving as guests all persons who may apply.—*Rex v. Ivens*, 7 Car. & P. 213; Story on Bailments, § 476, 7th edition.

3. The rulings of the court on the evidence must compel a reversal. The statement of the witness as to the appearance of George Richardson, while on trial charged with the larceny, was the mere expression of an opinion, and was not legal evidence.—*Johnson v. The State*, 17 Ala. 618; *Donnell v. Jones*, 13 Ala. 490. If he had been on trial for the offense, the evidence could only have been urged against him as an implied admission, and would not have been competent for that purpose; and even an express admission by him, or confession, would not have been admissible as evidence against his employer.—*Maples v. Railroad Co.*, 63 Ala. 601; *Henry v. Northern Bank*, 63 Ala. 527; *Bynum v. So. Pump Co.*, 63 Ala. 462; 80 Penn. St. 107.

J. W. POSEY, *pro se*, with STALLWORTH & BURNETT, and JNO. GAMBLE, *contra*.—(1.) Under the facts proved, the defendant was the keeper of a public inn or hotel, and the plaintiff was a guest at his house when the loss occurred.—Story on Bailments, §§ 475, 477, 479, 468, 485; 4 Wait's Actions & Defenses, pp. 1–2, §§ 1, 2; Wharton's Law. Negl. §§ 679, 683; 2 Kent's Com. 770–2, 8th ed. (2.) If the defendant was the keeper of a public inn or hotel, his failure to take out a revenue license was a misdemeanor, for which he might have been prosecuted criminally, but did not relieve him from the civil duties and responsibilities which the law attached to his position. To allow it to have this effect, would be to allow him to take advantage of his own wrong. (3.) The defendant's abortive attempt to shield himself from liability, by showing that he had provided an iron safe for the safe custody of valuables, and had given public notice thereof to his guests, must fail on the proof; 1st, because it was not shown that plaintiff had actual notice thereof, and the facts necessary to charge him with constructive notice were not proved; 2d, because the statute applies only to cities, and there was no attempt to show that Evergreen is a city.

[Beale v. Posey.]

(4.) Evidence tending to show that the money was stolen by one of the defendant's servants at the hotel, was relevant and admissible for the plaintiff; and any evidence which would be competent as against the servant himself, when charged with the larceny, ought also to be admissible against his employer, when sued civilly for the same wrong. (5.) The evidence objected to was not the mere statement of an opinion by the witness, but was a matter of fact open to observation, to which a witness is allowed to testify.—63 Ala. 275; 57 Ala. 566; 50 Ala. 107; 49 Ala. 4; 38 Ala. 703; 37 Ala. 288; 58 Ala. 395; 11 Ala. 737. (6.) The exception to the charges given was only a general exception, and can not prevail if any one of the charges is correct.

BRICKELL, C. J.—The proposition involved in the first special plea, to which a demurrer was sustained, and in the charge requested and refused, to the refusal of which an exception was reserved, is, that as the defendant was not a licensed keeper of an inn or hotel, though he may have kept a house of public entertainment, he was absolved from the common-law liability for the goods of his guests lost *infra hospitium.* This, it is insisted, is the result of the statutory regulations of inns, hotels, and boarding houses, embodied in the Code.—Code of 1876, §§ 522–25.

These sections form part of the general revenue laws of the State; the first requiring every keeper of an inn or hotel to take out a license annually, to be issued by the judge of probate, the sum to be paid for such license being graduated according to the population of the town in which the inn or hotel may be situate. It is declared, "the liabilities of the keepers of such inns, or hotels, and of persons who are guests therein, shall be such as are fixed by the laws of the land, in the absence of a special contract regulating the same, made between the parties thereto." The next section authorizes the surrender of licenses taken for the keeping of an inn or hotel, and declares that only such persons as are required to take out license, "shall be considered as inn-keepers or hotel-keepers." The next section authorizes the keeping in any town, city, or village, of a house or place for the entertainment of travellers, lodgers, transient persons, or guests, imposing a tax on the net income derived therefrom. The last section provides, that no person shall have the right to demand board, lodging, or entertainment, from the keeper of any unlicensed house of entertainment, otherwise than by special contract; and the parties to such contract shall be bound by the stipulations thereof lawfully made, and not otherwise. In the absence of such special contract, evidenced by a memorandum in print or in writing, to be fur-

[Beale v. Posey.]

nished to such guest, boarder, or lodger, by the keeper or manager of such house, compensation is not allowed him.

The obvious purpose of these statutory regulations, so far as not devoted to the derivation of revenue, is to authorize the keeper of a house of entertainment, not licensed, to contract specially with the guests or boarders he may receive and entertain, and when such special contract is made and evidenced in conformity to the statute, that it shall become the measure of the right, liability and duty of each party. By the common law, an imperative duty of an inn-keeper was, to receive and entertain, for a reasonable compensation, all persons applying, not of disorderly conduct, and having the means of payment. There was as little discretion left him in the choice of his guests, as there was to the common carrier in the selection of the persons for whom he would perform his duties. Each is engaged in public employment, bound, in the absence of reasonable grounds for refusal, to serve all having a necessity for their services. The purpose of the statute is, to confer on the keeper of the unlicensed house of public entertainment the liberty of receiving only such guests or boarders as may enter into a special contract with him. But, if the keeper of such house does not enter into a special contract with the guest, furnishing him a memorandum thereof in print or in writing, limiting his liability, the common law intervenes, and from that the measure of his liability must be ascertained.

All statutes are construed in reference to the principles of the common law; and it is not to be presumed that there is an intention to modify, or to abrogate it, further than may be expressed, or than the case may absolutely require.—1 Kent, 464. The keeper of a house of entertainment, holding himself out to the world as the keeper of a public inn, in that capacity inviting public patronage, trust and confidence, not exacting, as he may, a special contract from his guests or boarders, can not be heard to say that his professions were false—that he was unlicensed, and not in fact an inn-keeper, bound to his duties, and answerable to his liabilities. The principles regulating the rights, duties and liabilities of an inn-keeper and guest have their origin and foundation in considerations of public policy, and are designed entirely for the protection and security of travellers and the transient public, who are compelled to intrust their property to the keeper of inns and hotels. The purposes of the statute are satisfied, when the keeper of an unlicensed house of entertainment is allowed large liberty in the making of a special contract with the guest or boarder. If he does not choose to exercise the liberty—if without a special contract he receives and entertains the guest—he can not devolve upon the latter the duty of inquiry whether he is licensed or unlicensed, and claim

[Beale v. Posey.]

the absolution from liability the statute intends to secure only when it is stipulated for in a special contract. There was no error in sustaining the demurrer to the first special plea, and in the refusal of the charge requested.

The keeper of a public inn or hotel in a city, complying with the requirements of the statute (Code of 1876, §§ 1549--51), may relieve himself from liability for the loss of money, jewelry, watches, &c., within the inn or hotel, not occurring through his fraud, or the fraud of some clerk or servant employed by him. The statute is for the benefit of the inn-keeper, intended to afford him the opportunity of protecting himself from losses to which his fraud, or that of his servants, does not contribute. To the benefit he is not entitled, unless he gives notice to the guest that a safe depository for his money or other valuables is provided. The mere posting of notice on a single door of the hotel, however public it may be, is not a compliance with the statute, and will not justify the inference of notice to the guest. The application of the statute, under any state of facts, to this case, is not apparent. By its terms, the statute is limited to the keepers of inns or hotels in a city, and can not be extended to towns or villages, or to inns or hotels situate in the country. It is not shown that Evergreen is a city, and in the absence of evidence of that fact, the charge of the court upon this point is abstract.

The true relation of the plaintiff was that of a guest, and not that of a boarder. He was the resident of another town, visiting Evergreen for the mere temporary purposes of his business. There may be, sometimes, much of difficulty in determining whether the relationship of guest exists. But, when the character of traveller, of mere transient or temporary visitor, exists, and is retained, the relation of guest and inn-keeper exists. 4 Wait's Actions and Defenses, 2; Story on Bailments, § 477; *Berkshire Woolen Co. v. Proctor*, 7 Cush. 417. The simple fact that the plaintiff contracted for board and lodging at a less price than the defendant usually charged, does not change the fact that he was a mere traveller, or temporary, transient visitor. The inn-keeper, like a common carrier, may contract to serve one person for a less sum than he usually serves others, but the relation or liability he bears is not thereby changed. In *Berkshire Woolen Co. v. Proctor, supra,* the court said: "The simple fact that Russell made an agreement as to the price to be paid by him by the week, would not, upon any principle of law or reason, take away his character as a traveller and guest. A guest for a single night might make a special contract as to the price to be paid for his lodging and whether it were more or less than the usual price, it would not affect his character as

[McCarthy v. Nicrosi.]

guest. The character of guest does not depend upon the payment of any particular price, but upon other facts."

In the admission of evidence of the conduct, demeanor, or appearance of the servant, George Richardson, subsequent to the loss of the money, while on trial charged with its larceny, the Circuit Court erred. If then his conduct, demeanor or appearance, was indicative of guilt, the fact would have been competent evidence against him, as would have been his confession then made. But by his acts, or declarations, subsequent to the loss of the money, his employer could not be affected.—*Elcox v. Hill*, 98 U. S. 218.

There was no error in admitting the evidence of the plaintiff, that he knew and recognized the walk of the servant, Richardson, in the hall, at or about the time of the discovery of the loss of the money. The point of objection is, that it was mere matter of opinion. So far as that may be true, it is of opinion formed from observation, dependent for his value upon the opportunities of observation, and, like the recognition of the human voice, incapable of higher evidence.

We have passed upon all the assignments of error which have been argued by counsel; and for the error pointed out, the judgment must be reversed, and the cause remanded.