947 So.2d 1045 (2006)
William Terry GRAY, as executor of the estate of John Merrill Gray II, deceased
v.
John Merrill "Jack" GRAY III.
1050143.
Supreme Court of Alabama.
June 30, 2006.
*1046 Herbert E. "Chip" Browder of Hubbard, Smith, McIlwain, Brakefield & Browder, P.C., Tuscaloosa, for appellant.
Michael S. Ballard, Birmingham, for appellee.
SEE, Justice.
William Terry Gray, the executor of the estate of John Merrill Gray II ("John"), appeals the probate court's judgment finding that John Merrill Gray III ("Jack") is entitled to receive a share of John's estate under Ala.Code 1975, § 43-8-91. We reverse the probate court's judgment and remand the case for further proceedings consistent with this opinion.

Background
In 1981, John executed his will. At that time, John was married to Mary Rose Gray and had two children from a prior marriage, Robert B. Gray and Monica L. Muncher. John's will devised all of his estate to his wife Mary and did not include his two children.[1] In 1984, John and Mary gave birth to John Merrill "Jack" Gray III. In 1989, John and Mary divorced. John and Mary's divorce judgment and property settlement included a provision creating a trust for Jack, which states that "[o]ne-half of all assets, inheritance or disbursements of any kind received by the Husband from his mother's estate shall be placed in trust for his son, Jack." Pursuant to Ala.Code § 43-8-137,[2] even though John's will devised all of his estate to Mary, Mary would not inherit under John's will upon his death because John and Mary divorced. In 2004, John died without having changed his will.
*1047 William Terry Gray, the executor of John's estate, petitioned the Jefferson County Probate Court to probate John's will. Jack petitioned the probate court for an order finding that he is entitled to a share of John's estate under Ala.Code 1975, § 43-8-91, which provides in full:
"(a) If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:
"(1) It appears from the will that the omission was intentional;
"(2) When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child; or
"(3) The testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision be reasonably proven."
The executor moved the probate court to dismiss Jack's petition. The executor argued that Ala.Code 1975, § 43-8-91(a)(2), applies because John had two children when he executed his will and devised substantially all of his estate to Jack's mother, Mary. Therefore, the executor argued, Jack was not entitled to his intestate share of John's estate. The executor also argued that Ala.Code 1975, § 43-8-91(a)(3), applies because, he argued, John provided for Jack in a non-testamentary transfer in lieu of a testamentary transfer when he established a trust in Jack's favor upon his divorce from Jack's mother. Robert and Monica, John's children from his previous marriage, also moved the probate court to dismiss Jack's petition under Ala.Code 1975, § 43-8-91(a)(3).
The probate court granted Jack's petition, holding that Jack is entitled to a distribution from John's estate equal in value to the share he would have received had John died intestate. The executor appeals the order of the probate court.[3]

Standard of Review
The parties do not dispute the facts of this case. Therefore, we are presented only with questions of law. Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).

Analysis
The executor argues that the probate court erred in holding that Jack is entitled to a share of John's estate. He argues that Ala.Code 1975, § 43-8-91, excludes Jack from taking a share because of the exception set forth in subparagraph (a)(2): "When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child." Specifically, he notes that when John executed his will, John had two children from a prior marriage and John devised all of his estate to Mary, the mother of Jack, the omitted child.
Jack argues that the holding in Boackle v. Bloom, 272 Ala. 490, 132 So.2d 586 (1961), applies in this case. In Boackle, we held that where a testator's will did not provide for any of his eight children who were living when he executed his will and the will was devoid of any indication that he had contemplated having children after he executed his will, a child born after the making of the will was entitled to take a child's part the same as if the father had died intestate. 272 Ala. at 494, 132 So.2d at 590. Jack's argument is unpersuasive *1048 because Boackle is based on a former version of the pretermitted child statute; the current version became effective on January 1, 1983.[4]
In determining whether Jack may benefit from § 43-8-91, we give the words of the applicable statute their plain, ordinary, and commonly understood meaning, and we interpret the language to mean what it says. See Ex parte Gadsden Reg'l Med. Ctr., 904 So.2d 234, 236 (Ala.2004) ("`[W]e must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.'" (quoting Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003))).
We recognize the instruction of Ala. Code 1975, § 43-8-2, that the Probate Code be "liberally construed" to promote its underlying purposes, one of which is to "make effective the intent of a decedent in the distribution of his property." § 43-8-2(b)(2). However, § 43-8-91(a)(2) does not place before the courts the issue of the decedent's intent, in contrast with § 43-8-91(a)(1) and (a)(3). Those provisions preclude the omitted child's inheritance under the will when "[i]t appears from the will that the omission was intentional" or "[t]he testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision be reasonably proven." In § 43-8-91(a)(2), the legislature has made assumptions regarding the testator's intent where the two stated factors are present. The courts are not invited to make further inquiry, as we are in § 43-8-91(a)(1) and (a)(3).
In Foster v. Martin, 286 Ala. 709, 246 So.2d 435 (1971),[5] this Court stated:
"[T]he pretermission statute is one of substance rather than remedial. It creates and confers upon natural born and adopted children a right to property which would not be theirs without the statute. It is in derogation of the common law, and must therefore be strictly construed, and it will not be extended further than is required by the letter of the statute. Pappas v. City of Eufaula, 282 Ala. 242, 210 So.2d 802 [(1968)]; Mobile Battle House, Inc. v. Wolf, 271 Ala. 632, 126 So.2d 486 [(1961)]."
286 Ala. at 712, 246 So.2d at 438.
Section 43-8-91 states that, if a child is born subsequent to the execution of a will and the will fails to provide for the child, *1049 the omitted child is entitled to a share of the testator's estate, except in certain circumstances. One of those exceptions is that an omitted child is not entitled to a share of the estate if "[w]hen the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child."[6]
In 1981, when John executed his will, he had two children by a prior marriage, and his will devised all of his estate to Jack's mother Mary. Therefore, § 43-8-91(a)(2) applies, and Jack may not receive a share of John's estate.
Jack argues that the exception in § 43-8-91(a)(2) should not apply to him because, he says, § 43-8-91(a)(2) "does not appear to contemplate a situation wherein the testator has children, divorces their mother, remarries, executes a will that makes no provision for any children whatsoever, than [sic] has a child with that second wife."[7] Jack's brief, pp. 8-9. However, § 43-8-91(a)(2) states only two conditions for excluding an omitted child from an intestate share of the testator's estate: (1) the testator had one or more children at the time he executed his will, and (2) the testator's will devised substantially all of the testator's estate to the other parent of the omitted child. Because the statute is one of substance and is in derogation of the common law, we must construe it strictly and not extend its reach beyond its terms. See Foster, supra. Jack's argument, therefore, fails. The fact that John's other children were from a prior marriage is immaterial under § 43-8-91. Thus, Jack does not escape the exclusion found in § 43-8-91(a)(2). Accordingly, Jack is not entitled to receive a share of John's estate under § 43-8-91.
The dissent would have us
"read the exception set forth in § 43-8-91(a)(2) as inapplicable to this proceeding because, at the time of the execution of the will, there was no `other parent of an omitted child' or, in other words, the testator had no parenting relationship with the devisee and therefore no basis to assume from the terms of his will an attitude of favoring her to the exclusion of their children."
947 So.2d at 1052-53. The dissent would have this Court rewrite the statute, relying for the authority to do so on the language of § 43-8-2 that the statute should be liberally construed to promote the purposes of simplicity and effecting the intent of the decedent.[8] In order to accomplish this simplicity and effect the intent of the decedent, the dissent offers what it concludes is the "only rational basis" for the *1050 following language of Section 43-8-91(a)(2):
"(a) If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:
". . . .
"(2) When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child. . . . "
(Emphasis added.) That "only rational basis" of the exception, the dissent offers, is that it
"is an intent to deny relief to a child then in being who is omitted from the will and whose other parent, under the terms of the will, is entitled to a devise and to whom, ostensibly, the omitted child can look for an inheritance."
947 So.2d at 1052 (first emphasis added). Because, as § 43-8-91(a) makes clear, the entire provision is dealing only with omitted children who are "born or adopted after the execution of [the testator's] will," to adopt the construction that it is intended to apply only to a child "then in being" is to give to the statute a meaning opposite of what it says. We will leave such rewriting to the legislature, whose job it is to amend or repeal statutes.
"If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to look to consequences of the interpretation of the law as written." Ex parte Presse, 554 So.2d 406, 411 (Ala. 1989). Section 43-8-91(a)(2) is not ambiguous. Thus, we are not at liberty to ponder whether and how the legislature might have written the statute differently to further its intention in the case now before us, nor may we read into the statute additional language the legislature might have included to facilitate the result it might desire in this case.
The dissent further suggests that
"there is no reasonable basis on which to suggest that, had the testator executed a new will after Jack's birth, he would have been disposed to treat Jack any differently than the children he had previously excluded."
947 So.2d at 1052. We are not prepared to revise a statute to have it do what the legislature did not provide for it to do, simply because there is no evidence indicating that the decedent would not have done what we might decide he should have done. Choosing a course of action based on the absence of evidence is always treacherous. In addition, the testator in this case chose to omit his older, then living children from his will, and at the same time devised his estate to someone other than to their mother; we might assume that he would similarly have wanted to omit Jack and not to have Jack's mother inherit from his estate.
Finally, the dissent justifies its proposed revision of the statute by stating:
"Any other construction would reach an absurd result, which we are compelled to avoid. See Abramson v. Hard, 229 Ala. 2, 7, 155 So. 590, 593 (1934) (`"Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of the language employed, but from the fact that giving a literal interpretation of the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the legislature."') (quoting 25 R.C.L. 959)."
947 So.2d at 1052.
Before this Court sets about revising a statute, we must find not simply a desirable reason for doing so, but an absolutely *1051 compelling reason. This case does not meet the test enunciated in Abramson v. Hard, 229 Ala. 2, 155 So. 590 (1934). There is no ambiguity in this statute, and that fact disposes of the justification offered. However, even if there were ambiguity, while the result provided by the legislature may or may not be the one that those of us on this Court would have provided, it certainly does not reach the level of absurdity required before this Court is compelled to conclude that the legislature meant something other than what its words convey.[9]

Conclusion
We reverse the probate court's order and remand the case to the probate court for further proceedings consistent with this opinion. Because we are reversing the probate court's order based on Ala. Code 1975, § 43-8-91(a)(2), and remanding the case to the probate court for further proceedings, we pretermit consideration of the executor's remaining arguments.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, WOODALL, STUART, and SMITH, JJ., concur.
LYONS, BOLIN, and PARKER, JJ., dissent.
LYONS, Justice (dissenting).
The testator executed his will in 1981, leaving all of his estate to his second wife, to whom he was then married. At the time, he had two children from a previous marriage who are not mentioned in the will. In 1984, the appellee, Jack Gray, was born. In 1989, the testator divorced his second wife, Jack's mother. The testator never executed another will. Upon the testator's death, Jack petitioned the court for a share of the testator's estate. The probate court held that he was entitled to receive a share.
Section 43-8-91, Ala.Code 1975, "Pretermitted children," provides, in pertinent part:
"(a) If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:
". . . .
"(2) When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child. . . . "
The main opinion relies upon the confluence of (a) the existence of more than one child at the time the testator executed his will and (b) a devise of his entire estate to his then wife, who would later bear the pretermitted child. Of course, the children then in being were the result of the union of the husband and his first wife.
Section § 43-8-2, Ala.Code 1975, provides:
"(a) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.
"(b) The underlying purposes and policies of this chapter are:
"(1) To simplify and clarify the law concerning the affairs of decedents;

*1052 "(2) To discover and make effective the intent of a decedent in the distribution of his property."
The Commentary to § 43-8-91 states:
"The general principle upon which this section is based is the same as the principle supporting former § 43-1-9 (1975). That principle is to preclude unintentional pretermission of a child. . . . "
The legislature created an exception to the rule permitting an omitted child to inherit when, at the time of the execution of the will, the testator, as a parent of one or more children, devises substantially all his estate to "the other parent of the omitted child." § 43-8-91(a)(2). The only rational basis for such an exception is an intent to deny relief to a child then in being who is omitted from the will and whose other parent, under the terms of the will, is entitled to a devise and to whom, ostensibly, the omitted child can look for an inheritance. Also, without such an exception, an omitted child born after the execution of the will could inherit in the face of a testator's decision to favor the other parent of his then existing children to the exclusion of such children. In light of this circumstance, there is no reasonable basis on which to suggest that, had the testator executed a new will after Jack's birth, he would have been disposed to treat Jack any differently than the children he had previously excluded.
The result reached in the main opinion assumes the testator intended to bestow an inheritance on the second wife, notwithstanding the possibility of additional children and to the exclusion of any such children, at a time when the testator had no children whatsoever by his second wife. I believe that we should read the reference in § 43-8-91(a)(2) to "one or more children" in context with the additional reference to "the other parent of the omitted child" so as to reach the rational result of restricting the class of "one or more children" referred to in the statute to those children in the marriage of the testator and the other parent of any omitted child. (Emphasis added.) If we construe the statute as the main opinion does, we ignore the reality that the testator's role as a parent in the circumstance described in the statute must exist in concert with another parent in an existing marital relationship. We therefore must read into the statute the consequence of such reality, so that the reference to the "testator hav[ing] one or more children" must embrace the concept of a testator having one or more children with another parent. In so doing, we avoid reading the reference to "the other parent of the omitted child" in an unnatural isolation, devoid of context. We also comport with the legislative command to "liberally construe[] and appl[y] [the chapter] to promote its underlying purposes and policies." § 43-8-2(a).
Any other construction would reach an absurd result, which we are compelled to avoid. See Abramson v. Hard, 229 Ala. 2, 7, 155 So. 590, 593 (1934) ("`Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of the language employed, but from the fact that giving a literal interpretation of the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the legislature.'" (quoting 25 R.C.L. 959) ). I would therefore read the exception set forth in § 43-8-91(a)(2) as inapplicable to this proceeding because, at the time of the execution of the will, there was no "other parent of an omitted child" or, in other words, the testator had no parenting relationship with the devisee and therefore no basis to assume from the terms of his will *1053 an attitude of favoring her to the exclusion of their children.
BOLIN and PARKER, JJ., concur.
NOTES
[1] The parties do not dispute that "the Decedent devised all his estate to said wife, Mary Rose Gray." See Executor's brief, p. 4; Jack's brief, p. 2.
[2] Section 43-8-137 provides, in part:

"If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse . . . unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent. . . . "
[3] Robert and Monica do not appeal the probate court's order.
[4] The predecessor to Ala.Code 1975, § 43-8-91, Section 10, Title 61, Code of Alabama 1940 (Recomp.1958), read:

"Whenever a testator has a child, born after the making of his will, either in his lifetime or after his death, or adopted after the making of his will, and no provision is made in the will in any way for such contingency, such birth or adoption operates as a revocation of the will, so far as to allow such child to take the same share of the estate of the testator as if he had died intestate."
Neither party argues that the predecessor statute to § 43-8-91 controls.
[5] Foster v. Martin was decided under a previous version of the Probate Code, which did not contain a legislative mandate that the Probate Code be liberally construed to effect any stated purposes. However, the statement in Foster that the pretermission statute should be strictly construed is not abrogated, at least in this case, by the mandate in the current Probate Code that it be liberally construed to effect the intent of the testator. As we explained above, § 43-8-91(a)(2) does not allow for judicial consideration of the testator's intent. However, the current mandate that the Probate Code be construed to "simplify and clarify the law" does apply, and simplicity and clarity are furthered by our interpretation of the § 43-8-91(a)(2) to mean what it says, rather than an interpretation that would call for a further inquiry into the testator's unexpressed intentions.
[6] Ala.Code 1975, § 43-8-91(a)(2), does not distinguish an omitted child whose "other parent" is divorced from the testator after the testator executed his or her will from an omitted child whose "other parent" was divorced from the testator before the testator executed his or her will. The legislature could have limited § 43-8-91(a)(2) to only one of those categories by including language to that effect.
[7] Jack cites Boackle, supra, as authority supporting this argument. However, we have determined that Boackle was not based on the current pretermitted-child statute, § 43-8-91. Therefore, Jack's reliance on Boackle is misplaced.
[8] Section § 43-8-2, Ala.Code 1975, provides:

"(a) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.
"(b) The underlying purposes and policies of this chapter are:
"(1) To simplify and clarify the law concerning the affairs of decedents;
"(2) To discover and make effective the intent of a decedent in the distribution of his property."
[9] The legislature might well have assumed that in a case like this one it could anticipate that the child would be protected in the divorce proceeding, either directly or by a distribution of a share of the marital assets to the custodial parent. In this case, as we have previously noted, Jack was provided for in the divorce proceeding by the creation of a trust.